IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KENNETH SMITH,

    Plaintiff,

v.    Civil Action No. 1:17-cv-01097

MEGAN BRENNAN,

    Defendant.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff, a male employee of the United States Postal Service ("USPS"), initiated this suit for discrimination on September 29, 2017. In 1993, Plaintiff was hired by USPS as a mechanic and was moved, a few years later, to position as an electronics engineering technician at the Dulles Processing and Distribution Center ("Dulles P&DC") in Loudon County. After his move and during the relevant time period, Plaintiff's first level supervisor was Clement Jackson, and his second level supervisor was Gloria Luna.

Plaintiff has self-published two books on his studies of genetics. In approximately 2010, Plaintiff began posting

advertisements for these books in USPS facilities, including the employee bulletin board at Dulles P&DC and community bulletin boards in the public lobbies of several USPS Post Offices.

These notices were removed. Plaintiff was informed that certain individuals found the notices to be offensive and that he was not authorized to post things for sale on the employee bulletin board. Two supervisors in particular were responsible for the removal of the book advertisements. Ms. Luna removed one book advertisement some time in 2010 or 2011, as instructed by a higher-level USPS supervisor; and Vincent Carter instructed Plaintiff to cease posting such advertisements. Plaintiff continued to do so, posting up to four times a day, and at least 1,000 times in total on one community bulletin board location.

Four years later, on September 3, 2014, Plaintiff left his personal vehicle parked in the Agency's parking lot. After that time, the vehicle, while unoccupied and in neutral gear, began rolling from the parking space. The vehicle traveled nearly 100 feet, crossing over the employee walkway and struck a curb before stopping. Plaintiff's vehicle was not placed in the park position, which was cited as cause for the incident.

Concerned for the safety of employees on the premises, Ms. Luna initiated a pre-disciplinary interview, at which Plaintiff was represented by a union representative. Following that interview, Ms. Luna and Mr. Carter recommended Plaintiff's

2

employment be terminated because of the car incident. On October 6, Plaintiff received a thirty-day termination letter. Through the union grievance process, the termination was reduced to a seven-day "paper suspension" to be removed from Plaintiff's personnel file after three months. For this reason, Plaintiff never served a formal suspension and never lost pay as a result of the disciplinary action.

In November, 2014, Plaintiff was denied overtime pay for time he spent working as the Equal Employment Opportunity ("EEO") representative at his workplace. Plaintiff spent numerous hours counseling a co-worker through the EEO process and attended a deposition for the related case.

Plaintiff remains employed at USPS. Plaintiff's supervisor, Ms. Luna, retired in 2015. His other supervisor, Mr. Carter, remains with USPS but Plaintiff has had no difficulties with Carter since the 2014 discipline for the rollaway incident.

On December 15, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). In January, 2015, the EEO Office informed Plaintiff that it would investigate his discrimination and retaliation claim with respect to the single notice of removal issued in October, 2014. The letter instructed Plaintiff that, if he did not agree with the determined scope, he must provide a written response within seven days of the receipt of the letter. Plaintiff never

3

identified any disagreement. The EEOC judge concluded Plaintiff failed to demonstrate that USPS' rationale was a mere pretext for unlawful discriminatory animus. On July 3, 2017, the EEOC provided Plaintiff with a Right to Sue Letter. Later that same year, Plaintiff filed the Complaint initiating this action.

In his Second Amended Complaint, Plaintiff alleged Illegal Termination and Failure to Pay Overtime under Title VII (Counts I and II), First Amendment Retaliation under 42 U.S.C. § 1983 (Count III), Free Speech Violation under 42. U.S.C. § 1983 (Count IV), Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law under 42 U.S.C. § 1983 (Count V), Religious Discrimination and Genetic Discrimination under Title VII (Counts VI and VII). On January 22, 2019, the Court granted Defendant's Motion to Dismiss on Counts V, VI, and VII. Discovery is now complete and Defendant's case is ripe for summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court may enter

summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to find an issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

To initiate a lawsuit for discrimination, a plaintiff must first exhaust his administrative remedies by filing a complaint with the EEOC and receive a Notice of Right to Sue. See Laber v. Harvey, 438 F.3d 404, 415-17 (4th Cir. 2006). In that complaint, the plaintiff must raise any claim that "reasonably relate[s]" to those raised within the later judicial complaint. Chacko v. Paxutent Inst., 429 F.3d 505, 509 (4th Cir. 2005)(quoting Evans v. Techs. Apps. & Servs. Co., 80 F.3d 954, 962-63 (4th Cir. 1996)). Thus, the scope of a private action is limited by "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Chisolm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981). Only those claims stated in, those that reasonably relate to, and those developed by a reasonable investigation of the original complaint may be maintained in a subsequent lawsuit.

5

See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996).

Here, Plaintiff failed to fully exhaust his failure to pay overtime claim with the EEOC. His formal administrative complaint does not mention USPS's decision to not pay him overtime for assistance he provided to another USPS employee. Plaintiff received a letter informing him that the agency had construed his administrative complaint to include only a claim based on the notice of removal and so, consequently, would not investigate any other claim. The letter instructed Plaintiff to provide, within seven days, a written response specifying any disagreement with the defined scope. Plaintiff did not. He also did not attempt to amend his administrative complaint, although after failing to respond to this notice, it is unlikely that he would have been allowed to do so. See Black v. Potter, 2008 WL 509475, at *14 (D.S.C. Feb. 21), aff'd on other grounds, 286 Fed. Appx. 841 (4th Cir. 2008). Raising this claim in federal court, without fully exhausting the available administrative remedies, is improper and risks "judicial interference with the operation of the federal government." Austin v. Winter, 286 Fed. Appx. 31, 35 (4th Cir. 2008) (citation omitted). This Court lacks jurisdiction to address the failure to pay overtime claim in Count II.

A plaintiff alleging discrimination may prove his case by using either (1) direct or circumstantial evidence of discrimination, or (2) the burden-shifting approach under the *McDonnell Douglas* "pretext" framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Plaintiff concedes there is no direct evidence of discrimination, and so the parties proceed under the *McDonnell Douglas* approach.

Under the *McDonnell Douglas* "pretext" framework, a plaintiff must first establish a prima facie case of unlawful retaliation or prove a set of facts allowing a fact-finder to conclude that, more likely than not, the adverse employment action was the product of discrimination. See McDonnell Douglas, 411 U.S. at 802; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If he succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). If the defendant is successful, the plaintiff must show that the articulated reason is a pretext for discrimination. Id. at 430-31.

Plaintiff fails to establish that Defendant discriminated against him on the basis of race or religion. A prima facie case of discrimination under Title VII requires a plaintiff to prove

7

(1) his membership in a protected class; (2) an adverse employment action was taken against him; (3) his job performance met his employer's legitimate expectations at the time of the adverse action; and (4) he received treatment different from similarly situated employees outside the protected class. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd on other grounds, 566 U.S. 30 (2012).

Plaintiff falls short of proving the fourth element. A "similarly-situated" employee, for purposes of Title VII, is an individual similarly-situated "in all respects." See Spencer v. Virginia Union Univ., 919 F.3d 199, 207-08 (4th Cir. 2019). As such, "similarly-situated" individuals are those employed in the same capacity and with the same supervisors. See Monk v. Potter, 723 F.Supp. 2d 860, 877-78 (E.D. Va. 2010), aff'd, 407 Fed. Appx. 675 (4th Cir. 2011); see also Horton v. Alltel Comms., Inc., 2009 WL 1940059, at *25 (W.D.N.C. July 2, 2009).

Plaintiff alleges disparate treatment of other employees, but he does not specify whether he is utilizing these alleged comparators for his discrimination or First Amendment claim. Plaintiff's use of comparators fails either purpose. Of the nine individuals identified, Plaintiff admits eight held different positions than Plaintiff. Many of the individuals worked in completely different facilities. The identified individuals reported to different supervisors or had different USPS

8

supervisors decide to issue discipline to them. And some were in the exact same protected class as Plaintiff. Assuming Plaintiff could meet the other elements of the prima facie, which Defendant argues he cannot, Plaintiff fails on the final element. Consequently, Plaintiff's claims for illegal termination in Count I fail.

Plaintiff similarly fails to prove the necessary elements for a retaliation claim. To establish a prima facie case of retaliation, Plaintiff must establish the following: (1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the asserted adverse action. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008). In retaliation claims, the burden for Plaintiff is higher than in discrimination context; he must prove that his protected activity was the "but for" cause of the retaliation. See Univ. of Texas S.W. Ned. Str. v. Nassar, 570 U.S. 338, 360 (2013).

Plaintiff has not proved the third element, that there was a causal connection between his protected activity and his notice of removal. Plaintiff twice engaged in protected activity. First, he filed an administrative claim of race discrimination in December, 2010. Second, he filed an administrative claim of retaliation in November, 2011. To establish a causal connection, the temporal proximity between the protected activity and the

9

adverse employment action must be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). A three to four-month gap is too long to support a causal connection between protected activities. See Pascual v. Lowe's Home Ctrs., Inc., 193 Fed. Appx. 229, 233 (4th Cir. 2006); see also Shields v. Fed. Exp. Corp., 120 Fed. Appx. 956, 963 (4th Cir. 2005). Both of Plaintiff's administrative complaint filings occurred over three years before the received discipline. Plaintiff asserts that because one claim remained pending at the Supreme Court at the time his notice of removal was issued, his claim satisfies the causal connection element. However, every action that occurs during the processing of an earlier claim of discrimination does not "restart the causation clock" for retaliation purposes. Breeden, 532 U.S. at 273; see Redd v. New York State Div. of Police, 923 F.Supp. 2d 371, 389 (E.D.N.Y. 2012). The later appeal process of Plaintiff's claim would not extend the timeframe of assessment for causation purposes. The facts thus do not present a temporal proximity sufficient for evidence of causality, and so Plaintiff has not met his burden as to one element of his prima facie case for retaliation. For this reason, Plaintiff's claim in Count III fail.

Alternatively, even if Plaintiff proves his prima facie case for discrimination or retaliation, he cannot demonstrate that Defendant's legitimate, non-discriminatory reason for issuing

10

the notice of removal was pretext for unlawful racial animus. Safety concerns serve as legitimate, non-discriminatory basis for issuing employment-based discipline. See Odom v. Int'l Paper Co., 652 F. Supp. 2d 671, 691-92 (E.D. Va. 2009), aff'd, 381 Fed. Appx. 246 (4th Cir. 2010); see also Ze-Ze v. Kaiser Permanente Mid-Atlantic States Regions, Inc., 833 F.Supp. 2d 543, 549 (E.D. Va. 2011).

Defendant USPS maintains that the Notice of Removal was issued because of Plaintiff's negligent conduct in leaving his vehicle unattended and without placing the gears in proper park position, causing it to roll through Defendant's parking lot. Plaintiff does not dispute that his car rolled away from its parking space in Defendant's parking lot. Instead, Plaintiff argues the decision to discipline him for this incident was one made without authority, because his car was a state registered vehicle and the event occurred while Plaintiff was off the clock. Defendant, however, has presented evidence to the contrary, including the testimony of USPS managerial employees that employee conduct, when on USPS grounds, may be basis for discipline. Under the USPS *Employee and Labor Relations Manual*, employees are responsible for keeping the work area safe; according to the USPS manager issued policies, this includes obeying all safety regulations, procedures, and practices while on the Agency's premises. These regulations institute specific

11

safety instructions for driving and parking motor vehicles, including those personally-owned when operating on Defendant's premises. It is not the duty of this Court to weigh the propriety of an employer's actions, but to evaluate whether those actions were motivated by unlawful animus. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005). Plaintiff has not provided any evidence to put into question the legitimacy of Defendant's presented reason for termination.

Furthermore, Plaintiff's claims in Counts III and IV fail for the following reasons. Although it is unclear whether the Plaintiff seeks monetary or equitable relief, considering Plaintiff's pro se statutes, the Court will evaluate both. First, assuming the claims to be for monetary relief, the constitutional claims asserted apply only to state, not federal, actors. See Gomez v. Toledo, 446 U.S. 635, 640 (1980). Plaintiff brought this action against the federal agency, the United States Postal Service. Even if the Plaintiff's constitutional claims were brought pursuant to the federal analogue to Section 1983, they fail because the federal analogue for monetary relief "does not lie against either agencies or officials in their official capacities." Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971); see Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002), aff'd on other grounds, 540 U.S. 614 (2004). Plaintiff names Defendant Megan Brennan in her official capacity

as Post Master General of the United States Postal Service. Thus, these claims may not proceed under *Bivens*.

In the alternative, construing Plaintiff's request to be for equitable relief, the claims still fail. To assert any claim in federal court, Plaintiff must demonstrate constitutional standing. See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). The requirements for standing include proof of an "injury in fact," that is "fairly traceable to the challenged action of the defendant," and a likelihood "that the injury will be redressed by a favorable decision." Id. To constitute an "injury in fact," the injury must be "actual or imminent," not merely pointing to a past injury but rather to a likely future injury because of the very same practice that serves as the basis of the constitutional claim. See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see also SourceAmerica v. U.S. Dep't of Educ., 368 F. Supp. 3d 974, 1001 (E.D. Va. 2019). Plaintiff has not established a likelihood that he will receive discipline, in the near future, from USPS officials in retaliation for his decision to post book advertisements in USPS facilities. The conduct serving the basis for Plaintiff's constitutional claim occurred in October, 2014, five years ago; the key perpetrator of the unconstitutional action, supervisor Gloria Luna, retired over four years ago, in February 2015.

Notably, Plaintiff testified he has not experienced employment-related adversity as a result of his book advertisements since his rollaway incident. There appears no threat to Plaintiff at his place of employment, and so his claims fail for lack of standing.

In addition, Plaintiff's claims fail on the merits because Plaintiff has not presented evidence connecting the putative First Amendment activity with the discipline received. To seek relief under a theory of First Amendment retaliation, Plaintiff must demonstrate that (1) he engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected his First Amendment rights; (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). To meet the rigorous causation requirement, the Plaintiff must show his engagement in protected First Amendment activity was the "but for" cause of the adverse action. Huang v. Bd. of Govs., 902 F.2d 1134, 1140 (4th Cir. 1990). As part of this evaluation, the Court considers whether the temporal proximity between the two events "tends to negate the inference" of causation. Penley v. McDowell County Bd. of Educ., 876 F.3d 646, 656 (4th Cir. 2017)(quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)). In this evaluation, an eight to nine month gap is "too far removed . . . to raise a genuine issue of material fact concerning causation." Conley v. Town of Elkton, 190 Fed. Appx 246, 253 n.4 (4th Cir.

2006); see Penley, 876 F.3d at 656 (citing Booth v. Maryland, 337 Fed. Appx. 301, 310 (4th Cir. 2006); see also Meredith v. Russell County Sch. Bd., 133 F. Supp. 3d 838, 845 (W.D. Va. 2015), aff'd, 669 Fed. Appx. 122 (4th Cir. 2016) (holding that a span of thirteen months negates the idea of a causal connection).

Here, Plaintiff alleges he began posting ads for his book in Defendant's facilities in 2010. This predates the adverse action, in October, 2014, by four years. This timeframe established by Plaintiff is too attenuated to support a genuine issue of material fact concerning causation, and so Plaintiff's claims in Counts III and IV fail.

For the forgoing reasons, this Court finds that Defendant is entitled to summary judgment.

An appropriate order shall issue.

*signature*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
~~October ___, 2019~~
Nov. 4, 2019

15